## APPEAL OF WALKER CREAMERY PRODUCTS CO.

Docket No. 2856.    Submitted July 1, 1925.    Decided September 7, 1925.

> The taxpayer is not entitled to an allowance for exhaustion, wear and tear of property in excess of that allowed by the Commissioner.
>
> The Commissioner's computation of taxpayer's profits tax for the year 1918 under section 328 of the Revenue Act of 1918 approved.

*Virgil E. Bennett, Esq.*, for the taxpayer.
*Benjamin H. Saunders, Esq.*, for the Commissioner.

Before MARQUETTE and LITTLETON.

This is an appeal from a determination by the Commissioner of a deficiency in income and profits tax in the sum of $19,047.89 for the year 1918.

### FINDINGS OF FACT.

The taxpayer is a Pennsylvania corporation, with its principal place of business at Warren, and is engaged in the manufacture and sale of dairy products.

The Commissioner, upon application by the taxpayer, determined the excess and war-profits tax liability for the year 1918, under the provisions of section 328 of the Revenue Act of 1918, to be a sum equivalent to 45.25 per cent of the net income for that year.

In its return for the year 1918, taxpayer claimed a deduction on account of depreciation of properties employed in the business in the amount of $22,213.30. The record does not show how this

amount was computed, nor does it show a segregation thereof as between the various classes of assets. This deduction was disallowed by the Commissioner and a lesser amount substituted therefor.

Taxpayer contends that the depreciation allowances made by the Commissioner, with respect to certain assets, are inadequate, and that the allowances thus made by the Commissioner should be increased in the aggregate by the sum of $12,785.29. There is given below a tabulation showing the assets with respect to which the taxpayer claims greater depreciation allowances than those made by the Commissioner, the rates used by the Commissioner in computing the allowances made by him, and the rates which the taxpayer contends should be used in computing proper allowances:

| Assets | Commissioner's rates | Taxpayer's rates |
|---|---|---|
| Ice-cream factory: | *Per cent* | *Per cent* |
| Boilers | 10 | 15 |
| Machinery and equipment | 10 | 10 |
| Ice-cream packers, milk cans, tins, covers, etc | 10 | 37½ |
| Ice-cream cabinets | 5 | 25 |
| Auto trucks | 25 | 25 |
| Sugar Grove Creamery, machinery and equipment | 10 | 15 |
| Walker Farm Creamery, machinery and equipment | 10 | 15 |
| Jackson Run Creamery, machinery and equipment | 10 | 15 |

In each instance the rates claimed above by the taxpayer, except in the case of ice-cream cabinets, include an increase of 50 per cent over what the taxpayer deems to be proper normal rates to take care of accelerated depreciation, which the taxpayer alleges took place during the year 1918 as the result of abnormal conditions.

The depreciation allowances which the taxpayer claims with respect to each of the assets listed above are in excess of the results obtained by applying the rates which it is contending for to the book value of those assets. This is due to the fact that the taxpayer has included in the depreciation allowances, which it asks this Board to approve, the alleged residual value of certain assets which it states were discarded during the year.

Numerous vouchers were introduced in evidence during the hearing showing purchases during the years 1918, 1919, and 1920 of new equipment to replace worn-out and discarded equipment.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

LITTLETON: This appeal presents two issues for the consideration of this Board:

First, we are asked to find that the Commissioner's determination of the excess and war-profits tax liability of this taxpayer under

the provisions of section 328 of the Revenue Act of 1918 is in excess of that amount which bears the same ratio to the net income of the taxpayer for the year 1918 as the average tax of representative corporations engaged in a like or similar trade or business bears to their average net income for the same year; and

Second, we are asked to reject the depreciation allowances computed by the Commissioner with respect to certain assets and substitute therefor the allowances contended for by the taxpayer which in the aggregate exceed the Commissioner's allowances by the amount of $12,785.29.

During the hearing, taxpayer sought to introduce testimony to establish the fact that the average rate of tax paid by representative corporations was not in excess of between 25 and 30 per cent of their average net income. It developed that the testimony which taxpayer was attempting to place in the record was purely of a hearsay character, to which counsel for the Commissioner properly objected and his objection was sustained.

Taxpayer has adduced no evidence whatever which would justify the Board in setting aside the determination by the Commissioner of its tax liability under the provisions of section 328.

We have no evidence before us which would warrant a rejection of the rates used by the Commissioner in his determination of the depreciation allowances to which this taxpayer is properly entitled as deductions from the gross income for 1918, and the substitution therefor of the rates contended for by the taxpayer. Taxpayer has failed to show by any competent evidence that the assets employed in its business suffered any greater wear and tear during the year 1918 than was usual under the normal conditions existing in prior and subsequent years.

The taxpayer contends that the depreciation allowances made by the Commissioner should be increased so as to take care of the residual value of assets worn out and discarded during the year. Vouchers showing purchases of new equipment during the year were admitted in evidence and witnesses testified that this new equipment was intended to and did replace old and worn-out equipment. Granting that such evidence might be accepted as showing what articles of equipment were discarded during the year, there is lacking in the record evidence as to the cost of the discarded articles and the accrued depreciation with respect thereto to the date they were discarded, facts which must be shown and proved before we can determine the extent of the losses, if any, which the taxpayer has suffered by discarding these assets.

ARUNDELL not participating.